Carolyn ORREN v. SMACKOVER NURSING HOME
and Arkansas Guaranty Fund

CA 93-300                                         876 S.W.2d 600

Court of Appeals of Arkansas
En Banc
Opinion delivered May 25, 1994

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellant.

*Kevin Staten*, for appellee.

JOHN E. JENNINGS, Chief Judge. On January 11, 1989, Carolyn Orren, an employee of Smackover Nursing Home, sustained a compensable injury to her back while lifting a patient. On April 17, 1989, Ms. Orren again hurt her back at work.

During the course of this litigation the employer's workers' compensation insurance carrier went bankrupt, and the Arkansas Guaranty Fund has entered an appearance for the purpose of pay-

ing benefits due to the claimant. In the meantime some of the claimant's medical bills incurred as a result of the compensable injury have been paid by Blue Cross Blue Shield, her medical insurance carrier.

The primary issue in the case at bar is whether the Guaranty Fund must pay the claimant's medical bills, notwithstanding that they have already been paid by Blue Cross Blue Shield. On this question the Commission said:

> The initial issue in this case is whether A.C.A. § 23-90-117 applies in this case. That section states in pertinent part:
>
>> (a)(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under the policy.
>>
>> (2) Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under the insurance policy.
>
> We agree with the Administrative Law Judge and find that a correct interpretation of the statute is that those amounts which claimant had previously received as payment for medical benefits by Blue Cross/Blue Shield, are not now to be repaid by the Guaranty Fund. Claimant on appeal argues that the statute has no application to workers' compensation. We find no merit to that argument. First, the purpose of the Guaranty Act as set forth in A.C.A. § 23-90-102 is to provide funds to pay claims of insolvent insurers. Thus, the Fund is designed to protect individuals, not pay double benefits. Claimant is asking the Guaranty Fund to pay her benefits. Although claimant contends that the section has no application to workers' compensation, we note that she is asking the Guaranty Fund to pay her benefits. If claimant is going to receive benefits from the Guaranty Fund, then the provisions of the Guaranty Fund Act must apply. Further, with respect to this issue, we note that A.C.A. § 23-90-105 states that the Guaranty Fund Act is to be liberally construed to effect the purpose of the Act.

■ We agree with the Commission's interpretation of Ark. Code Ann. § 23-90-117 and its holding that the Guaranty Fund is not responsible for paying medical bills previously paid by Blue Cross Blue Shield.

Appellant also argues that the disposition of the case at bar is governed by our decision in *Owen Drilling Co.* v. *Allison*, 33 Ark. App. 60, 800 S.W.2d 728 (1990). In *Owen Drilling* we held that neither the employer nor its insurance carrier was entitled to an offset for the amount paid toward medical expenses by a claimant's private medical insurance carrier. Our opinion was based on case law and an analogy to the collateral source rule. We agree with the Commission that the case at bar is governed by statute, not the common law.

■ Appellant contends that the Commission erred in holding that she was not entitled to additional temporary total disability benefits beyond February 5, 1990. The Commission found that the claimant's healing period ended on February 5, 1990, and this finding is not challenged on appeal. Clearly, temporary benefits may not be paid after the end of the healing period. *Arkansas Secretary of State* v. *Guffey*, 291 Ark. 624, 727 S.W.2d 826 (1987).

Affirmed.

MAYFIELD and ROGERS, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the result reached by the majority opinion in this case.

The appellant was injured while employed by appellee Smackover Nursing Home. An administrative law judge determined her claim to be compensable and ordered payment of reasonable and related medical expenses. The employer and its carrier, Intercontinental Insurance Managers (now bankrupt), appealed to the full Commission. During the pendency of that appeal, Blue Cross/Blue Shield paid certain of appellant's medical charges. The full Commission affirmed the law judge.

Subsequently, appellant filed this claim alleging certain medical benefits had not been paid. An administrative law judge held appellee Arkansas Guaranty Fund (which provides funds to pay claims of insolvent insurers) "shall pay all medical benefits which

have not been paid by Blue Cross." The full Commission affirmed, holding the Guaranty Fund is entitled to an offset for medical benefits paid by Blue Cross/Blue Shield based upon Ark. Stat. Ann. § 23-90-117 (Repl. 1992). The Commission said it was not faced with a claimant who has not received compensation benefits, but with a claimant who wants a double recovery; that she is not entitled to a double recovery; and that the Guaranty Fund is entitled to an offset for medical benefits paid by Blue Cross/Blue Shield. I think the Commission was wrong for two reasons.

In the first place, the Arkansas Supreme Court has said:

Act 871 of 1977, as amended by Act 738 of 1987 and Act 901 of 1993, now codified as Ark. Code Ann. §§ 23-90-101 through 123 (1987 and Supp. 1993), is known as the "Arkansas Property and Casualty Insurance Guaranty Act." Its purpose, declared in § 23-90-102, is to provide funds in addition to assets of insolvent insurers for the protection of "covered claims" against such insurers which would otherwise go unpaid. To achieve that purpose, the Act is to be interpreted liberally. § 23-90-105.

*Douglass* v. *Levi Strauss & Co.*, 315 Ark. 380, 868 S.W.2d 70 (1993). The evidence in this case shows that all benefits to the appellant were first controverted by Intercontinental Insurance Managers. In an attempt to get the appellant some relief, her attorney agreed with Blue Cross/Blue Shield that, even though her policy with it provided it would not pay for any benefits covered by workers' compensation, if Blue Cross/Blue Shield would go ahead and pay, it would be reimbursed for any payments it advanced to the appellant. No finding was made by the law judge or Commission on this point, and if there is any question as to the facts in this regard, I would certainly agree to remand for the factual issue to be resolved. However, my point is that the appellant will not actually make a double recovery. The truth of the matter is the appellant really only "borrowed" money from Blue Cross/Blue Shield. Moreover, I think it is bad public policy to adopt a view of the law that discourages an insurance company from advancing benefits in situations like the one involved here.

In addition, we have clearly held that an employee is entitled to recover the full amount of medical expenses as a result

of a workers' compensation injury, without any offsets for amounts previously paid by his own private medical insurance. *Owen Drilling Co.* v. *Allison*, 33 Ark. App. 60, 800 S.W.2d 728 (1990). The majority opinion states that this holding "based on case law" does not apply to the present case because it is governed by statute. However, I submit that a careful reading of Ark. Code Ann. § 23-90-117 (Repl. 1992) will reveal that it simply does not provide that a claim, under the factual circumstances in this case, should be reduced. It does provide for claims against other insurers to be exhausted before the Guaranty Fund shall pay, but it does not provide for a reduction in the Fund's liability under the circumstances in this case.

In the second place, the appellant points out that there are two entities who were originally liable here. She says:

> [T]he Smackover Nursing Home, Mrs. Orren's employer, is the one charged with the primary responsibility to pay benefits under the Act. A.C.A. § 11-9-401(b) states "The primary obligation to pay compensation is upon the employer, and the procurement of a policy of insurance by an employer. . . shall not relieve him of the obligation." The Smackover Nursing Home is simply permitted to transfer its responsibilities to an insurance carrier. It could, if it elected, become self insured. If the respondent's insurance carrier is insolvent and unable to pay benefits, then the responsibility to pay those benefits goes back to the employer . . . Smackover Nursing Home. The Smackover Nursing Home was a party to the first hearing and it is obligated to pay all reasonable and related medical expenses. If the Guaranty Fund does not reimburse Blue Cross/Blue Shield, Smackover Nursing Home will have to do so under the [Commission's decision.]

Thus, it is clear that the Commission's refusal to require the Guaranty Fund to pay the appellant because she has "borrowed" some money from Blue Cross/Blue Shield is "not on target." The Guaranty Fund owes what the Smackover Nursing Home's bankrupt insurance carrier owes — it should pay that amount to the appellant. I agree with the following conclusion from the appellant's brief.

The failure of this Court to reverse the finding of the full commission [and] order that the Guaranty Fund reimburse Blue Cross/Blue Shield will allow for an inequitable and inconsistent result in cases involving the Guaranty Fund as opposed to cases involving private insurers. Further, it will discourage private insurers such as Blue Cross/Blue Shield from coming forward and assisting their policy holders. Instead of assisting policy holders in the prompt payment of medical claims, where there is a workers' compensation claim pending, Blue Cross and other insurers will simply wait on the sideline for the outcome of the workers' compensation claim. Meanwhile, the individual worker will suffer by being denied medical treatment when the workers' compensation carrier refuses to shoulder its responsibilities and [the] private health insurance company does the same while awaiting an outcome of the workers' compensation claim.

The decision of the full workers' compensation commission in this case is unsupported by the law, represents bad public policy and should be reversed.

ROGERS, J., joins in this dissent.